IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ESTATE OF JEFFREY WEST and KIM ELLIS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 1:17-cv-291-TFM-MU |
| ROBERT DeFRANCISCO, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is *Defendant Robert DeFrancisco's Motion for Summary Judgment or, In the Alternative, Motion to Dismiss and Brief in Support Thereof* (Docs. 189-190, filed 10/3/19). Plaintiffs timely filed their response in opposition and Defendant timely replied. *See* Docs. 192, 193.

After a careful review of all the written pleadings, motion, response, reply, and the relevant law, the Court **GRANTS** the motion for summary judgment filed Defendant Robert DeFrancisco.

## I. PARTIES, JURISDICTION, AND VENUE

Plaintiff Kim Ellis is the Personal Representative of the Estate of Jeffrey West. She brought suit against several defendants for causes of action that relate to the death of Jeffrey West. The Complaint lists Plaintiff Estate of Jeffrey West and Plaintiff Kim Ellis separately – though it appears that for the purposes of the lawsuit they are a singular entity. However, for the purposes of this Opinion the Court shall refer to "Plaintiffs" as that is how the parties do so in their pleadings and motions.

Named defendants listed in the Second Amended Complaint are as follows:[1]

- The Estate of John Vanlandingham – Dr. John Vanlandingham was a medical doctor employed by the Escambia County Jail. Wanda Vanlandingham is the personal representative of the Estate of John Vanlandingham. For the purposes of this opinion, they shall be collectively referred to as "Defendant Vanlandingham."

- Robert DeFrancisco, M.D. was a psychiatrist employed at the Escambia County Jail. ("Defendant DeFrancisco")

- Defendant Marbra Chandler was a licensed practical nurse (LPN) employed at the Escambia County Jail. ("Defendant Chandler")

- Defendant Monica McCall a/k/a Monica Dunn was a nurse employed at the Escambia County Jail. ("Defendant McCall")

- Defendant Denise R. Brantley a/k/a/ Denise Turner was a nurse employed at the Escambia County Jail. ("Defendant Brantley")

- Defendant Ronnesha Hodges was a nurse employed at the Escambia County Jail. ("Defendant Hodges")

- Defendant Stephen Wade Capps was a corrections officer employed at the Escambia County Jail. ("Defendant Capps")

The Court previously issued a Memorandum Opinion and Order dismissing all defendants with the exception of Defendant Robert DeFrancisco, M.D. *See* Doc. 186. However, to provide context, the Court lists all defendants here.

---

[1] The Court does not list unnamed parties who are not specifically identified. Doc. 75 at 4, ¶ 20. Nor does it list the original (now dismissed) Defendants Escambia County and Sheriff Grover Smith except as they relate to the instant motion.

The District Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments of the United States Constitution. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the state law claims under the ALA CODE § 14-6-19, the tort of outrage, and the Alabama Medical Liability Act (ALA CODE § 6-5-540).

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

The only question regarding jurisdiction is whether it ended with the closure of the case on September 26, 2017 pursuant to the Stipulation of Dismissal filed on September 22, 2017 followed by the reopening on November 28, 2017. Docs. 31, 32, 35. The Court will address this in detail in its analysis.

## II.     FACTUAL BACKGROUND

On June 27, 2019 Jeffrey West ("West") was arrested on suspicion of property damage involving a telephone box and taken to the Escambia County Jail. *See* Doc. 75 at ¶ 21-22. West remained there as a pretrial detainee. While there, he became ill and his condition deteriorated significantly. *Id*. at ¶ 24. According to the second amended complaint, the medical report from the day he was booked states "Inmate states he his [sic] bipolar and thinks he has staph on the back of his left leg" and nursing notes state West had a "large abscess on the back of left thigh – with black center – with hard area 2x2in and surrounding redness 6x8in" and that she removed a "large amount of thick green bloody pus." *Id*. at ¶ 25-26. Additionally, Defendant Chandler provided West a Bactrim DS (antibiotic) but did not refer him to any other provider.

On June 29, Defendant Dunn noted a "very large amount of bloody green drainage.

Majority of (L) thigh red and hard" and continued providing Bactrim DS. *Id*. at ¶ 29. At no time did Defendant Vanlandingham examine the infection "nor is there any indication that any nurse ever discussed the infection with Dr. Vanlandingham." *Id*. at ¶ 33-34.

On July 5, West complained of "severe pain all over," back and stomach cramps, electricity running through his hands and feed, "feels like burning," shaking constantly, and "cannot quit" shaking. *Id*. at ¶ 37. Defendant Turner gave him ibuprofen. *Id*. at ¶ 38. The next day, West still complained of pain and itching. The nurse contacted Dr. DeFrancisco who told her to provide Librium and he would see West in four days. *Id*. at ¶ 39. Only July 8, West complained that his entire body tingled, and Defendant Hodges' notes indicate that he was "slobbering when talking. Voiced diarrhea x3 today" and complained of black stools and vomiting. *Id*. at ¶ 42. Hodges gave him ibuprofen. *Id*. at ¶ 43. Only July 8, West filed a grievance complaining that he could not keep food down, but Hodges closed the grievance the next day. *Id*. at ¶¶ 44-45.

On July 9, another lab draw was completed, and the results showed high levels of monocytes/eosinophils (white blood cells) and basophils. *Id*. at ¶ 46-48. Dr. Vanlandingham was notified and he advised the nurse to "continue to monitor for temp and any changes. To see Dr. DeFrancisco in the morning." *Id*. at ¶ 49. On July 10, Dr. DeFrancisco saw West, noted complaints of "knots in my tongue" and that West appeared lethargic to which he prescribed Librium. *Id*. at ¶ 50.

On July 10, 2015, a bond hearing was held and the court released West on his own recognizance – though he was not ultimately released from Escambia County jail until July 13, 2015. *Id*. at ¶¶ 77-79.

On July 11 at 3:10 a.m., Defendant Capps and Officer Percy Wheeler noted that West

vomited on himself.  *Id*. at ¶ 51.  Defendant Chandler noted a "large amount of blood dried secretion on face" and West complained of dry mouth, a tooth was falling out, being cold, and was "draw[n] up in fetal position."  She gave him Gatorade.  *Id*. at ¶¶ 52-53.  Later that day, she saw West spit out red liquid which he said was blood, but she could not tell if it was blood or red Gatorade.  *Id*. at ¶¶ 54-55.

On July 12, Chandler saw West again and found more yellow/green dried secretion on face and nose and that he complained of being very cold and feeling unwell.  Notes later from the day indicate Dr. Vanlandingham prescribed an antibiotic and Imodium, but suspected West of faking.  *Id*. at ¶ 59.  Later in the day Chandler gave more Imodium, but found West lying in the fetal position with a "large amount of thick green secretions" and the right eye was red and mottled.  *Id*. at ¶ 61.

By the early morning of July 13, West had urinated and defecated on himself.  Defendant McCall's notes reflect West had leg pain and muscle weakness while he complained of hurting all over.  Nurse Clark told Dr. Vanlandingham she thought West should go to the Emergency Room.  *Id*. at 62.

Upon his release from jail that same day, West immediately went to the emergency room at D.W. McMillan Hospital.  *Id*. at ¶ 79-80.  West arrived at 9:20 a.m. and by 9:50 a.m. was unconscious for a period of time.  *Id*. at ¶¶ 63-64.  Blood and urine results were abnormal and significantly out of the normal range.  *Id*. at ¶¶ 66-71.  At 3:15 p.m., he was transported to Baptist Hospital in Pensacola, Florida.  *Id*. at ¶¶ 82.  Records show West was diagnosed with rhabdomyolysis, seizures, renal failure, and dehydration and that the specialty care required was beyond what D.W. McMillan could handle.  *Id*. at ¶ 83.  All this was done in the same day he was released from Escambia County Jail.

West remained in the critical care unit at Baptist Hospital until his death on July 31, 2015. He died from failure of multiple organs and the listed cause of death was shock, acute respiratory syndrome, and hypoxia. The autopsy further listed complications of bronchopneumonia and pulmonary alveolar injury. *Id*. at ¶¶ 90-95.

### III.   PROCEDURAL HISTORY

On June 23, 2017, Plaintiffs filed their original complaint. *See* Doc. 1.[2]  The original complaint lists as defendants Sheriff Grover Smith, Escambia County, Jailers 1-5, Medical Professionals 1-10, and Medical Company. *Id*.  It was filed around 38 days before the statute of limitations would run on a § 1983 claim.  In the Parties section, Plaintiffs describe the Defendants as follows:

> 9.      Defendant Escambia County is a legally organized county and subdivision of the State of Alabama.
>
> 10.     Under Alabama law, Escambia County retains responsibility for maintaining a jail's physical facility and funding the jail's operations.
>
> 11.     Defendant Sheriff Grover Smith is the Sheriff of Escambia County, Alabama.  He operates the Escambia County Jail.
>
> 12.     Defendant Jailers 1-5 are jailers: employees or contractors of the Sheriff who had the ability to supervise, control, and direct Mr. West's activities, and who had the duty to ensure that he received adequate medical care and attention.
>
> 13.     Defendant Medical Professionals 1-10 are doctors, nurses, technician, and other allied professionals, who had the duty to provide Mr. West with adequate medical care, including monitoring his condition, observing his condition, and responding to his complaints.  These Defendants also were in a position to perform their duties.
>
> 14.     Defendant Medical Company is a corporation that contracts with the Sheriff, employs and controls the Defendant Medical Professionals, supervises

---

[2] Normally the Court would solely focus on the operative complaint – in this case the Second Amended Complaint filed on August 20, 2018 – however, due to the procedural nature of this summary judgment review, the Court will identify specific sections of the Original Complaint as they relate to the issues at hand as well as the Amended Complaint as needed.

their activities, provides them with training, and is responsible for their performance.

Doc. 1 at 3. In the Facts section, Plaintiffs describe the following about the Defendants listed in paragraphs 12, 13, and 14:

19.     Prior to his death, Mr. West explained that he had complained to the Defendant Jailers and Medical Personnel of his need for medical treatment, but was ignored

23.     Despite his complaints, none of the Defendants did anything to help Mr. West or see to his obvious, serious, and urgent need for medical treatment.

24.     Defendant Medical Personnel failed to provide any treatment.

25.     Defendant Jailers were present in the jail but failed to render any treatment.

*Id*. at 4.

Next, in Count 1, Plaintiffs assert claims for deliberate indifference to serious medical needs against Defendants Jailers 1-5, Medical Professionals 1-10, and Medical Company. *Id.* at 13. He generally states that they knew West had serious medical needs and acted with deliberate indifference to those needs and failed to provide or refused to obtain medical treatment for West. *Id*. In Count 2, Plaintiffs assert against Defendants Escambia County, Jailers 1-5, Medical Professionals 1-10, and Medical Company a violation of Ala Code § 14-6-19, failure to attend to a detainee's medical needs. *Id*. at 14-15. Count 3 asserts against Defendants Jailers 1-5, Medical Professionals 1-10, and Medical Company a claim for failure to intervene in violation of § 1983. *Id*. at 15-16. Count 5 asserts the Alabama tort of outrage against Defendants Escambia County, Jailers 1-5, Medical Professionals 1-10, and Medical Company. *Id*. at 17-18. Finally, in Count 6, Plaintiffs assert violations of the Alabama Medical Liability Act ("AMLA") against Defendants Medical Professionals and Medical Company. Specifically, it argues that Defendants Medical Professionals 1-10 and Medical Company breached the standard of care

required of them and were negligent in several respects. *Id*. at 19.[3]

Finally, Plaintiffs spent several pages/paragraphs describing the need to sue certain defendants as fictitious – John Doe defendants. Doc. 1 at 7-12. Plaintiffs stated that they made repeated attempts to obtain documents and information from the Sheriff's counsel to no avail. Further that the Sheriff, the County, and their attorneys were aware of the claims asserted in the case almost since the day West died and aware of the intent to pursue litigation. Here is the timeline listed by Plaintiffs in the original complaint:[4]

- July 17, 2015 – Plaintiffs sent a preservation letter to the Sheriff and the Escambia County Board of Commissioners

- July 22, 2015 – Plaintiffs sent a second preservation letter to the Sheriff, to the Jail, the Escambia County Board of Commissioners, and the County Administrator.

- August 13, 2015 Plaintiffs sent a notice of intent to perform an autopsy to the Sheriff, to the Jail, the Escambia County Board of Commissioners, and the County Administrator.

- August 14, 2015, the Sheriff and County's attorney responded to the autopsy letter indicating that their own hired physician would attend the autopsy.

- August 17, 2015, the Sheriff and County's attorney sent a preservation letter for tissue samples from the autopsy.

- On September 28, 2015, Plaintiffs made a request for records.

- On November 5, 2015, Plaintiffs sent a follow up email regarding the records request.

---

[3] Count 4 (Violation of the Alabama Open Records Act) was only asserted against the County and the Sheriff.
[4] The Court notes that the timeline states Plaintiffs took certain actions. The Court will repeat that here, but presumes it was Plaintiffs' counsel or a representative who completed such actions given the current evidence before the Court.

- On December 4, 2015, Plaintiffs sent another follow up email.

- On December 17, 2015, Plaintiffs sent another follow up email.

- On June 16, 2016, Plaintiffs called the Escambia County Jail and the Sheriff requesting copies of the records relating to West.

- On June 20, 2016, Plaintiffs again called the Escambia County Jail and the Sheriff requesting copies of the records.

- On June 23, 2016, Plaintiffs' firm (albeit the wrong attorney) received eight pages of records from the County. The records received were "just court records" and none related to West's time at the jail.

- On July 8, 2016, Plaintiffs called the Sheriff again asking for records and emailed the Sheriff's secretary a copy of the past preservation letters and records requests.

- On January 24, 2017, Plaintiffs sent another letter to the Sheriff, copying his attorney, requesting all relevant records.

- On March 27, 2017, Plaintiffs called the Sheriff to follow up.

- On March 29, 2017, Plaintiffs faxed the previous letter sent to the Sheriff.

- On April 4, 2017, Plaintiffs' paralegal emailed the County and Sheriff's attorney requesting a response to the record request. The paralegal received a response indicated that all documents subject to the public records act had been previously provided.[5]

---

[5] The Court specifically notes that the Sheriff/County attorney responded with obvious sarcasm to the paralegal. He stated: "Oh My! We have previously provided all documents that are subject to the public records act. And unless you are admitted to practice law in the State of Alabama, please refrain from advising me what your client is entitled to." Doc. 1 at 11; Doc. 118 at 40 (Exhibit 3). While a paralegal is not a licensed practitioner, she clearly was acting on behalf of her attorney supervisor and deserves more respect than what she was given.

- Plaintiffs further state that he made other calls to the County and Sheriff's attorney but does not specify the dates and indicates those calls were unreturned.

*Id.* at 7-11. Plaintiffs finally state that they intend to substitute the action names for the fictitious names in the complaint. *Id.* at 12.

On July 10, 2017, Defendants Sheriff Grover Smith ("the Sheriff") and Escambia County ("the County") filed their respective motions to dismiss under Fed. R. Civ. P 12(b)(1) and 12(b)(6). Docs. 10-11, 13-14. Plaintiffs filed their opposition to the motions to dismiss on August 16, 2017 to which the Sheriff and the County filed their replies on August 23, 2017. Docs. 22, 24, 25. On September 8, 2017, the assigned Magistrate Judge entered a Report and Recommendation that the motions to dismiss be granted and the claims dismissed without prejudice. Doc. 30. On the last day that objections could have been filed, the parties instead filed a Stipulation of Dismissal without prejudice as to the Sheriff and the County. Doc. 31. Consequently, by operation of Fed. R. Civ. P. 41(a)(1)(A)(ii), on September 26, 2017 the Court entered an order dismissing the case without prejudice and deemed the Report and Recommendation moot. Doc. 32.

Over a month later, on October 30, 2017, Plaintiffs filed a motion to reopen the case arguing that it had been improperly closed because not all defendants had been dismissed. Doc. 33. Specifically, that the case should not have been closed as to the fictitious defendants – Jailers 1-5, Medical Professionals 1-10, and Medical Company. *Id.* Former Defendants (the Sheriff and the County) filed a response in opposition arguing that the Court lacked jurisdiction to reopen the action and that an action cannot survive against only fictitiously named parties. Doc. 34. They further argue that Plaintiffs did not file any motion to alter or amend the

---

Though this information is not attached to the current motion by Defendant DeFrancisco. The Court takes judicial notice of the prior ruling and pleadings filed in the case.

judgment within the 28 days allowed by Rule 59(e) or take an appeal within the 30 days allowed to do so. *Id.*[6]

On November 28, 2017, the Court ordered that the motion to reopen was granted. Doc. 35. The Court noted that:

> In this action, Plaintiffs contend they have presented specific descriptions of the fictitious defendants. (Doc. 33 at 6) (citing [*Dean v. Barber* 951 F.2d 1210, 1216 (11th Cir. 1992)]). However, while Plaintiffs have described the positions held by the fictitious parties, these descriptions are general explanations that, without more, are not sufficient to identify "Defendant Jailers 1-5, Defendant Medical Professionals 1-10, and Defendant Medical Company" such that they could be served. As such, Plaintiffs have not sufficiently established that the facts of this action bring this case within the confines of the narrow exception set forth in *Dean*.

Doc. 35 at 5. However, the Court also found that the circumstances dictated that limited discovery on the identity of the "John Doe" defendants was appropriate given the circumstances. *Id.* at 7-8. The Court directed Plaintiffs to file a motion for discovery on or before December 27, 2017. On December 22, 2017, Plaintiffs filed their motion which the Court granted in part on January 9, 2018. Docs. 36, 37.

On April 16, 2018, the Court entered a show cause order regarding a status update as there had been no additional filings in the case since the Court granted the limited discovery. Doc. 38. Instead of filing a response, Plaintiffs filed a motion to amend the complaint indicating the discovery had been fruitful and had identified the parties they sought. Doc. 39. The Court granted leave to file an amended complaint. Doc. 40. The Amended Complaint was filed on May 14, 2018 and now identified as defendants Vanlandingham, DeFrancisco, Chandler, McCall, Brantley, Hodges, and Capps. Doc. 41. Though they did not file an answer, Defendants McCall, Brantley, Hodges, and Capps filed their first motion for summary judgment. Doc. 55.

---

[6] Given that the Sheriff and the County had been dismissed from the case and Plaintiffs were not seeking to reinstate them as defendants, it is questionable whether they even had standing to file such an objection or response.

Defendant DeFrancisco filed his motion to dismiss or in the alternative motion for more definite statement.  Doc. 59.[7]

On August 9, 2018, Plaintiffs filed another motion to amend the complaint to substitute the Estate for Dr. Vanlandingham since they learned he was deceased.  Doc. 69.  On August 20, 2018, the Court granted the request and the Second Amended Complaint was filed.  Docs. 74, 75.[8]  Consequently, the Court denied the prior motions to dismiss and for summary judgment as moot without prejudice to reassert any applicable arguments.  Doc. 101.  Additionally, the Court noted that Defendant Chandler and Defendant DeFrancisco had filed new motions after the Second Amended Complaint was filed, but that those documents were not independent documents that related to the operative complaint.  They merely related to prior motions and prior complaints.  As such, the Court also denied those motions without prejudice to reassert arguments as they may apply to the Second Amended Complaint.  *Id*.

Consequently, in response to the filing of the Second Amended Complaint, Defendants Chandler, McCall, Brantley, Hodges, and Capps filed their answer and new motion for summary judgment.  Docs. 87, 105.  After proper service, the Vanlandingham defendants also filed a motion to dismiss or alternative motion for summary judgment.  Doc. 114.  Plaintiffs requested an extension to respond in a single response as both motions raised related issues which the Court granted.  Docs. 116, 117.  Plaintiffs timely filed their omnibus response in opposition on January 25, 2019.  Doc. 118.  The applicable defendants timely filed their respective replies. Docs. 125, 126.  At the time, Defendant DeFrancisco did not refile a motion to dismiss, a motion

---

[7]  The Court entered an order finding that the motion did not meet the requirements of Rule 12(d) and therefore would be treated as a motion to dismiss pursuant to Rule 12(b)(6) or a motion for more definite statement pursuant to Rule 12(e).  Doc. 65.

[8]  On August 29, 2018, the case was reassigned to the undersigned.

for summary judgment, nor did he file an answer. In fact, to this date, he still has not technically filed an answer.

On September 24, 2019, the Court issued its Memorandum Opinion and Order granting the pending motions for summary judgment as to all defendants except Defendant DeFrancisco since he did not file a motion at that time. *See* Doc. 186. This brings the Court to the operative pending dispositive motion. Doc. 189.

## IV. PENDING DISPOSITIVE MOTION

Defendant DeFrancisco moves for summary judgment under Fed. R. Civ. P. 56 asserting several reasons: (1) The Court lacked jurisdiction to grant the motion to reopen action; (2) the claims are barred by statute of limitations, (3) the fictitious part pleading in federal jurisprudence does not apply because the original complaint filed to adequately describe the fictitious defendants; and (4) the claims against these defendants do not relate back to the original complaint because the Plaintiffs failed to use due diligence to discover their true identities. Doc. 189 at 1. Alternatively, he moves the Court to dismiss the claim under Fed. R. Civ. P 12(b)(6) for failure to state a claim upon which relief may be granted. *Id*. at 2.

Plaintiffs filed their response. Doc. 192. Plaintiffs acknowledge that based upon the Court's determination in the prior Memorandum Opinion and Order that this instant motion for summary judgment is also due to be granted for the same rationale. They specifically state that they still oppose the motion and incorporate their prior response to the other summary judgment motions. *Id*. But, they again acknowledge that there is nothing to distinguish Dr. DeFrancisco from the other defendants. *Id*.

To ensure clarity, the Court will repeat the summary of Plaintiffs' opposition outlined in the prior Memorandum Opinion and Order as well as Plaintiffs' prior opposition (Doc. 118).

The Court will collectively refer to the defendants as "the individual defendants." Despite that reference, this opinion only applies to Defendant DeFrancisco as the other individual defendants have already been dismissed.

Plaintiffs assert (1) equitable tolling applies and that they appropriately pled fictitious parties that relate back to the original complaint;[9] (2) the Second Amended Complaint sufficiently pleads deliberate indifference and medical malpractice by Defendant Vanlandingham. Specifically, Plaintiffs argues that they "are entitled to the reasonable inference that, during this investigation, the nurses in the infirmary…were again notified of the legal allegations made against them and that Plaintiffs had intended to pursue litigation." Doc. 118 at 4. Moreover, "[f]or over two years, the now-named Defendants hid while their employer ran interference to keep them hidden from view. For over two years, the County the Sheriff, and the individual Defendants obstructed valid legal process to produce jail and medical records which would identify the individual defendants. Through their motions, they now seek to have this Court reward them for their actions and to punish Plaintiffs for their diligence." *Id*. at 4-5.

Plaintiffs reiterate their timeline on attempts to obtain the records from the County and the Sheriff. *Id*. at 9-13. Plaintiffs specify that there were two open records requests to which the Sheriff and the County did not respond. *Id*. at 10. Further, email inquiries on November 5, 2015, December 4, 2015, and December 17, 2015 were ignored. *Id*. Further follow up was made on June 16, 2016 to which there was no response. Finally, after a follow up on June 20, 2016, the County's attorney mailed eight pages in response on June 23, 2016; however, none were responsive to the identity requests. *Id*. Another follow up was made by on July 8, 2016

---

[9] Plaintiffs cite both Documents 105 and 106 when making this argument. Doc. 192 at 2; Doc. 118 at 9. Yet, Doc. 106 was a motion for extension of time filed by the Plaintiffs to serve Defendant Vanlandingham. The Court assumes that Plaintiffs intended to reference Doc. 125 – which was the Vanlandingham motion to dismiss/alternative motion for summary judgment.

with no response.  *Id*. at 11.  On January 24, 2017, another request was sent along with a HIPAA authorization signed by the West Estate representative.  No response was received.  On April 4, 2017, another request was sent by the paralegal for Plaintiffs' counsel to which she received a sarcastic response.  *Id*.  Plaintiffs again argue that the Sheriff/County counsel worked with the individual defendants to engage in a clear pattern of obstruction to prevent them from learning the identities of the individual defendants.  *Id*. at 11-12.

Plaintiffs argue that the individual defendants now seek to benefit from that obstruction and request the Court apply the doctrine of equitable tolling.  Plaintiffs further aver that the initial complaint adequately describes the fictitiously pled defendants.  Finally, they assert that Plaintiffs exercised reasonable diligence in pursuing the identities of the individual defendants.

In the response to the instant motion for summary judgment, Plaintiffs also dispute several characterizations made by Defendant DeFrancisco.  Doc. 192 at 3.  Additionally, Plaintiffs aptly note that Defendant DeFrancisco does not submit any evidence like the other defendants did in opposing that they "knew" about the lawsuit or that DeFrancisco may have been aware of Plaintiffs' attempts to discovery his name.  *Id*. at 4.

Defendant timely replied to the Plaintiffs' response.  Doc. 193.  He states that Plaintiffs' conceded the motion and therefore it must be granted.  *Id*. at 1.

## V.    STANDARD OF REVIEW

Though Defendant filed an alternative motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6), the crux of the motion is one for summary judgment and both parties reference evidence in their respective pleadings.  Therefore, the Court views the motion under the summary judgment standard.

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material." *Id*. at 248, 106 S. Ct. at 2510. At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249, 106 S. Ct. at 2511. An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ*., 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co*., 9 F.3d 913, 918 (11th Cir. 1993)).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty Cty. Ga.*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). The court must view facts and draw all reasonable inference in favor of the nonmoving party. *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."

## VI.    DISCUSSION AND ANALYSIS

The primary issues discussed in these motions relate to the Court's jurisdiction and statute of limitations. The Court will address each in turn.

## A.    Jurisdiction

The Court will begin with the question of jurisdiction as Defendant asserts the Court lacked jurisdiction to reopen the case pursuant to Plaintiffs' motion to reopen. Doc. 189 at 1. However, it appears to the Court that Defendant DeFrancisco merely attempts to piggy-back on this argument from a prior defendant because there is no substantive analysis nor any reference to it in their motion beyond the barebones assertion on the first page of their motion. As noted in the prior opinion issued by the Court, this argument fails. As Defendant did not address it with any detail, the Court need not reiterate its prior ruling here and instead merely incorporates it by reference. *See* Doc. 186 at 18-20.

## B.    Statute of Limitations

Despite allowing the reopening of the case for the limited discovery and the clear facts that the County and the Sheriff were uncooperative, the analysis of the claims against the Defendant are barred by statute of limitations requires a more detailed discussion than the relatively brief discussion in the order reopening the case – which was solely a determination on the appropriateness of discovery and not an adjudication on any other legal matters or issues.

There appears to be no dispute by the parties that all the asserted causes of action have a two-year statute of limitations. The Court agrees. Counts 1 and 3 are brought pursuant to 42 U.S.C. § 1983 which has a two-year statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989) (holding that § 1983 claims look to the general state-law limitations statute for personal-injury actions); Ala. Code § 6-2-38(l) (providing for a two-year statute of limitations for personal-injury actions). The same is true for Count 2 (Failure to Attend to a Detainee's Needs under Ala. Code § 14-6-19 where the failure of a statutory duty may give rise to a cause of action for negligence. *See Ala. Power Co. v. Dunaway*, 502 So. 2d 726, 730 (Ala. 1987); Ala. Code § 6-2-38(l) (providing the statute of limitations for "all actions

for any injury to the person or rights of another not arising from contract and no specifically enumerated in this section must be brought within two years."). Count 4 is for the Alabama tort of outrage which also has a two year statute of limitations. *Continental Casualty Ins. Code. v. McDonald*, 567 So. 2d 1208, 1215 (Ala. 1990) (citing Ala. Code § 6-2-38). Finally, Count 5 is brought pursuant to the Alabama Medical Liability Act ("AMLA") which also has a two-year statute of limitations. Ala. Code § 6-5-482.

West died on July 31, 2015 – therefore the two year statute of limitations expired on July 31, 2017. The original complaint (Doc. 1) was filed on June 23, 2017 which was thirty-eight days prior to the expiration of the statute of limitations. As previously noted, the complaint identified only two specific defendants (the County and the Sheriff) and then a number of fictitious parties (Jailers 1-5, Medical Professionals 1-10, and Medical Company). Plaintiffs' Amended Complaint (Doc. 41) was filed May 14, 2018 which is the first time the remaining defendants were identified by name. Then on August 20, 2018, the Court allowed Plaintiffs to amend again by substituting the Vanlandingham Estate since Dr. Vanlandingham was deceased.

The Court will follow the same discussion as in its prior opinion because, as both sides notes, there is nothing to distinguish Defendant DeFrancisco from the other defendants. So the Court will first address "relating back" under Fed. R. Civ. P. 15 and then turn to equitable tolling.

### i. Relate Back

Relate back is only appropriate under Fed. R. Civ. P. 15(c)(1)(A) which states:

(c) Relation Back of Amendments.
(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
    (A) the law that provides the applicable statute of limitations allows relation back

Fed. R. Civ. P. 15(c)(1)(A).

Generally, fictitious-party pleading is not permitted in federal court. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citations omitted). A limited exception applies when "the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage." *Id*. (citations omitted). The Eleventh Circuit previously found that in the context of a diversity case, the rule "incorporates state law relation-back rules when state law provides the statute of limitations for the claims." *Saxton v. ACF Indus.*, 254 F.3d 959, 960 (11th Cir. 2001) (citing rule under its previously number of 15(c)(1)).

"In the wake of the 1991 amendments to Federal Rule of Civil Procedure 15(c), Eleventh Circuit authority on whether relation back is governed by federal or state law has been unsettled." *Estate of Rowell v. Walker Baptist Med. Ctr.*, 290 F.R.D. 549, 557 (N.D. Ala. 2013). However, the parties agree in this case that *Saxton* controls and though the *Saxton* decision was made in the context of a diversity case, the Court finds the principles equally applicable here. The Court has jurisdiction based federal question (§ 1983) and supplemental jurisdiction over state claims (§ 1367(a)) – simply put, Alabama state law provides the statute of limitations for all claims in this case and while not binding, the Court finds the analysis in *Mann v. Darden*, 630 F. Supp. 2d 1305 (M.D. Ala. 2009) compelling.

In *Mann*, the district court found that "Rule 15(c)(1)(A) clearly contemplates application in certain federal-question cases." *Mann*, 630 F. Supp. 2d at 1311 (citing Notes of Advisory Committee on 1991 Amendments). The court also noted that the United States Supreme Court held that, in § 1983 suits, state rules regarding how to toll limitations must be applied in addition to state statutes of limitations. *Id*. (citing *Bd. of Regents v. Tomanio*, 446 U.S. 478, 100 S. Ct. 1790, 64 L. Ed. 2d 440, 483-86 (1980)). Additionally, the Court cites *Johnson v. Railway*

*Express Agency*, 421 U.S. 454, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975) when it states "[i]n borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim."   This Court agrees.

Alabama's fictitious-party provision, Ala. R. Civ. P. 9(h), provides "[w]hen a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name." Next, Ala. R. Civ. P. 15(c)(4) states that "an amendment of a pleading relates back to the date of the original pleading when … relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h)."   Finally, the Alabama Supreme Court discussed the interplay between Ala. R. Civ. P. 9(h) and 15(c).

> Rules 9(h) and 15(c), Ala. R. Civ. P., allow a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted. Such a substitution is allowed to relate back to the date of the original complaint if the original complaint adequately described the fictitiously named defendant and stated a claim against such a defendant. In order for the substitution to relate back, the plaintiff must show that he was ignorant of the true identity of the defendant and that he used due diligence in attempting to discover it.

*Jones v. Resorcon, Inc.*, 604 So. 2d 370, 372-73 (citations omitted); *see also Saxton*, 254 F.3d at 965 (quoting *Jones*).   "Thus, under Alabama law, an amendment substituting an actual defendant for a fictitious defendant relates back when: (1) the original complaint adequately described the fictitious defendant; (2) the original complaint stated a claim against the fictitious defendant; (3) the plaintiff was ignorant of the true identity of the defendant; and (4) the plaintiff used due diligence to discover the defendant's true identity."   *Saxton*, 254 F.3d at 965 (citing *Jones*, 604 So. 2d at 372-73).   Therefore, the Court will look to these four elements to see whether the

amended complaint relates back to the original complaint.

### (a) Whether the original Complaint adequately described the fictitious Defendants and stated a claim against the fictitious defendants.

Here, Plaintiffs contend repeatedly that they presented specific descriptions of the fictitious defendants and the claims against them. *See* Doc. 33 at 6; Doc. 118 at 17. However, they do acknowledge that the Court already found that they did not meet the standard articulated by *Dean*, 951 F.2d 1210. *See* Doc. 118 at 18. Instead Plaintiffs attempt to argue that there is a different standard provided by Rule 9(h) as opposed to *Dean*.

Though they are technically separate elements, the Court finds, in this case, they are essentially intertwined and will address them together.

The Alabama Supreme Court stated that Rule 9(h) "allows a plaintiff to assert claims against a fictitiously named defendant who is subsequently substituted and named, and those claims will relate back to the date of the original *complaint if the original complaint adequately described the fictitiously named defendant and stated a claim against such a defendant*." *Ex parte Int'l Ref. & Mfg. Co.*, 972 So. 2d 784, 789 (Ala. 2007) (internal quotations and citations omitted) (emphasis in original). "In other words, merely naming the fictitious party in the style and/or body of the complaint is insufficient; the complaint must describe the actions that form the basis of the cause of action against the fictitiously named defendant." *Id.*

In the original complaint, there are claims made against Defendants Jailers 1-5, Medical Professionals 1-10, and Medical Company. Defendants Jailers 1-5 are specified as "jailers: employees or contractors of the Sheriff who had the ability to supervise, control, and direct Mr. West's activities and who had the duty to ensure that he received adequate medical care and attention." Doc. 1 at 2, ¶ 12. Defendant Medical Professionals are specified as "doctors, nurses, technician, or other allied professionals, who had the duty to provide Mr. West with adequate

medical care, including monitoring his condition, observing his condition, and responding to his complaints. These Defendants also were in a position to perform their duties." *Id.* at ¶ 13.

Counts 1, 2, 3, and 5 clearly identify they are asserted against Jailers 1-5 and Medical Professionals 1-10.[10] While a close call, the Court finds that these claims themselves were sufficiently specific with the limited information known at the time to satisfy the Rule 8 pleading requirements – certainly when the County and the Sheriff failed to provide the requested information which would permit the Plaintiffs to be more specific. Given the facts stated before the Counts – including the fact that upon his release, the first medical facility determined he needed to be sent by EMS to a facility that could handle his serious condition including rhabdomyolysis, seizures, renal failure, dehydration – that there are sufficient allegations to meet the requirements of Rule 8 to include consideration for *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). While *Iqbal* notes that "'the doors of discovery' do not unlock 'for a plaintiff armed with nothing more than conclusions'" the situation here does not consist of only conclusions and speculations on the part of the Plaintiffs. Further, fictitious pleading and Fed. R. Civ. P 26(d) do permit some early discovery – especially in light of the County and the Sheriff being uncooperative. *Iqbal*, 556 U.S. at 678-79, 129 S. Ct. at 1950. While it may not have been broken down specifically by each Medical Professional and/or Jailer, the Court cannot state that there is no claim against them (which satisfied element 2).

However, Count 6 also clearly identifies an intent to allege an AMLA claim against Medical Professionals 1-10. AMLA requires heightened pleading which – though somewhat

---

[10] West was a pretrial detainee, therefore his claims could be brought under § 1983 pursuant to the Fourteenth Amendment and not the Eighth Amendment which only applies to prisoners post-conviction. Regardless, caselaw treats the elements for them the same and the Court need not go into further detail here.

understandable given the lack of information available to Plaintiffs' at the time – still failed to meet that requirement.

> AMLA states:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or in the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action. The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts.

Ala. Code § 6-5-551. Consequently, Plaintiffs must include "a detailed specification and factual description of each act and omission alleged." *Id*. "This requirement is not tempered by the phrase 'when feasible and ascertainable,' as is the requirement that the plaintiff include the 'date, time, and place of the act [or] acts.'" *Looney v. Moore*, Civ. Act. No. 2:13-cv-733-KOB, 2014 WL 234676, *6, 2014 U.S. Dist. LEXIS 7883, *31-32 (N.D. Ala. Jan. 22, 2014). Plaintiffs failed to do so.

Therefore, the Court finds that Counts 1, 2, 3, and 5 adequately pled claims, but that Count 6 does not satisfy AMLA's requirements.

Yet, even though the claims are adequately pled in Counts 1, 2, 3, and 5, the Defendants were not identified with specificity such to satisfy either Ala. R. Civ. P. 9(h) or *Richardson*, 598 F.3d at 738 (discussing the description must be so specific to be "at the very worst, surplusage."). Here the description does nothing to identify which of the various jail guards or medical professions the allegations could involve. As such, the specificity requirement is not met for the purposes of relation back.[11]

---

[11] This analysis is different and separate from the analysis as to jurisdiction. The Court finds that the actions (or inactions) by the Sheriff and the County regarding the Plaintiffs' record

**(b) Whether the Plaintiff was ignorant of the true identity of the Defendants and whether the Plainitff used due diligence to discover the Defendants' true identities**

Much like the first two requirements were intertwined, in this case, these two elements are likewise intertwined. The third requirement is a difficult one because ultimately West died, so his knowledge cannot necessarily be transferred to his Estate. Though Plaintiffs' counsel was retained *prior* to his death, it is not for the Court to speculate what West was able or unable to convey in the days and hours before his death. Rather, any inferences must be construed in favor of the Plaintiffs and therefore, the Court will not assume that West was in a physical or mental condition to relay the names of the applicable jailers or medical professionals.[12] Further, given the refusal by the County and the Sheriff to respond to records requests relating to the identity of the staffers involved, the Court concludes that Plaintiff satisfies the element regarding the true identity of the Defendants for the purposes of a relating back analysis in light of the facts available to them at the filing of the complaint.

The Court now turns to whether the Plaintiffs used due diligence to discover the Defendants' true identities. Unfortunately, this is where Plaintiffs fail.[13]

---

requests gave the Court good reason to allow early discovery. And that, the Court did not need to consider the statute of limitations in that analysis. Here, the Court looks through a different lens – as relating back is one of the few means the case can survive and whether the description is sufficient.

[12] The Second Amended Complaint states that prior to his death, West made a video statement, but does not enter it into evidence for this summary judgment and the record is not clear whether he specifically identified any individuals. Thus, the record and any inferences must be construed in favor of Plaintiffs as the nonmovants.

[13] Some Court treat both elements as one – ignorant of the Defendants' identities and due diligence. *See, e.g. McKee v. Lucas*, 212 So. 3d 921, 926 (Ala. 2016) (citing *Crawford v. Sundback*, 678 So. 2d 1057). However, this seems to conflict with the other cases where the elements are listed separately. *See Jones*, 604 So. 2d at 372-73. Regardless, the Court here finds that based on the conduct of the Sheriff and the County, Plaintiffs did not know the identities of

The due diligence standard "is whether the plaintiff knew, or should have known, or was on notice, that the substituted defendants were in fact the parties described fictitiously." *Jones*, 604 So. 2d at 373 (quoting *Davis v. Mims*, 510 So. 2d 227, 229 (Ala. 1987)). Plaintiffs cite to a sister court case stating that he was only required to perform "ordinary diligence" and that Defendants seek to impose a bar higher than required. *See* Doc. 118 at 19 (citing *Lowery v. Nat'l Belt Serv. West, Inc.*, Civ. Act. No. 7:14-cv-622-JEO, 2014 WL 6685033, *4, 2014 U.S. Dist. LEXIS 164882, *12-13 (N.D. Ala. Nov. 25, 2014)). However, Plaintiffs' counsel also seek to excuse the fact that they ultimately did sit on the case until the eve of the expiration of the statute of limitations having only sent a few requests with some follow up emails, phone calls, and letters with large chunks of time with no action. Such is not sufficient.

In *Jones*, the Alabama Supreme Court noted that one defendant refused access to the product. Similar to the case at hand, the injury occurred almost 2 years prior to the filing of the complaint. Much like the case in *Jones*, the Sheriff and the County seemingly refused access to the records Plaintiffs sought. This was abundantly clear in the first year after West's death. The Alabama Supreme Court was clear that under the due diligence standard, a plaintiff is required to pursue diligently information that is being withheld, including seeking court-ordered access. *Mann*, 630 F. Supp. 2d at 1314 (citing *Jones*). Plaintiffs did not do so. Moreover, even when Plaintiffs filed their suit (with only 38 days before the statute of limitations ran), they did not petition the Court to seek emergency discovery. Rather, they merely noted the problems with the Sheriff and the County in the Complaint – there was no reference to an upcoming problem with the statute of limitations nor any efforts to request early discovery under Rule 26(d). Even on July 31, 2017 (the date the statute of limitations expired), Plaintiffs filed their Consent Motion

the Medical Professional or the Jailers. The question of due diligence is a separate inquiry – though admittedly the two go hand and hand for the purposes of the ultimate analysis.

for Extension of Time to respond to Defendants' motions to dismiss. *See* Doc. 16. They sought a two week extension to responding to the motions to dismiss with absolutely no reference to any discovery issues or statute of limitation problems. Rather, Plaintiffs stated "The bases for this request include: these are unusually complex motions that require a fair response; Plaintiffs' counsel has been out of town attending a hearing in California and could use the extra time; this action is in its infancy and an additional two weeks will not materially delay the action; and Defendants have consented to the request." *Id.* There is no sense of urgency nor any request for discovery. Not until August 16, 2017, do Plaintiffs even mention a desire to compel discovery from the Sheriff and the County. *See* Doc. 23. Even after they filed their urgent Motion for Status Conference on September 5, 2017, they ultimately filed the stipulation of dismissal after the Magistrate Judge entered his Report and Recommendation that the motions to dismiss be granted. *See* Docs. 28, 30, and 31. No reference was made about further discovery for the fictitious defendants until the motion to reopen the case. *See* Doc. 33. Once the Court re-opened the case, only after ordering that Plaintiffs file a specific motion for discovery, did Plaintiffs *finally* specifically request assistance from a court. *See* Docs. 35, 36. Even once the motion for discovery was granted, it was not until April 30, 2018 did Plaintiffs actually show an intent to substitute the actual names for the fictitious defendants – and that was only after the Court entered a show cause order why the case should not be dismissed for failure to prosecute before more than ninety (90) days had elapsed since the Court had granted discovery.

In sum, prior to the filing of the case there were large periods of time where Plaintiffs did nothing to pursue the information from the County and the Sheriff. After the filing of the lawsuit, there was still no attempt to diligently pursue the information until specific prodding by the Court. Consequently, the Court cannot find that Plaintiffs exercised due diligence in

pursuing the identity of the defendants. *See, e.g., Mann*, 630 F. Supp. 2d at 1314-15; *Jones*, 604 So. 2d at 373-74. Thus, any relation back to the original claim under Fed. R. Civ. P. 15(c)(1)(A) fails.

### ii. Equitable Tolling

Plaintiffs, in their omnibus response in opposition to the prior motions for summary judgment, primarily hang their argument on equitable tolling of the statue of limitations. They repeat the efforts by the Sheriff and the County to prevent them from discovering the names of the individual defendants.

"A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way as to the filing of his action." *Weaver v. Firestone*, 155 So. 3d 952, 957 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)); *see also LEAD Educ. Found. v. Ala. Educ. Ass'n*, --- So. 3d ---, 2019 WL 1090680, *6-7, 2019 Ala. LEXIS 15, *13 (Ala. 2019) (quoting *Weaver* and stating same). In other words, "equitable tolling is available in extraordinary circumstances that are beyond the petitioner's control *and* that are unavoidable even with the exercise of diligence." *Ex parte Ward*, 46 So. 3d 888, 897 (Ala. 2007) (emphasis added). Plaintiffs must establish both elements – one alone is insufficient. Finally, "[i]t is well settled that whether equitable tolling is applicable in a case generally involves a fact specific inquiry. *Ex parte VEL, LLC*, 225 So. 3d 591, 604 (Ala. 2016) (citations omitted).

Much like the prior analysis on due diligence for relating back, the Court cannot conclude that the Plaintiffs' counsel exercised due diligence nor that the circumstances were beyond their control. While they did file some open records requests and make some bare-bones emails,

telephone calls, and letter follow ups, it was readily apparent long before to the expiration of the statute of limitations that the Sheriff and the County would not cooperate. Instead of acting in a timely manner on that obvious fact, they instead waited until the eve of the expiration to file the instant suit. Even then, they did not seek the assistance from the Court on the issuance of subpoenas or any other means to compel until several months into the case (and only at Court prompting). Reasonable diligence to include court involvement (whether this Court through discovery requests or state court through enforcement of the open records requests) would have easily revealed the names of the individual defendants. Had the Plaintiffs' counsel diligently pursued this case, then the individual defendants could have been added long prior to the expiration of the statute of limitations.

There were periods of months (even up to six months) where no action seemingly occurred. Even after the filing of the lawsuit, there was no sense of urgency as noted in Plaintiffs' request for an extension to respond to the motions to dismiss and the lack of request for discovery until Court prompting. Even the filing of the Amended Complaint identifying the individual defendants did not occur until Plaintiffs were threatened with dismissal for failure to prosecute.

## VII. CONCLUSION

As the Court previously noted in the Memorandum Opinion relating to the other defendants, even given the egregious nature of the allegations, under Alabama law, the Court is not permitted to excuse this delay in the interests of justice. Neither the law on relating back nor the equitable tolling provisions are met here. Rather, this is a tragic case where there will be no resolution on the merits. Further, there is nothing about the circumstances involving Defendant DeFrancisco than any of the other defendants. As such, the same analysis applies dictating the

same unfortunate result.

Consequently, based on the above, *Defendant Robert DeFrancisco's Motion for Summary Judgment or, In the Alternative, Motion to Dismiss and Brief in Support Thereof* (Doc. 189) is **GRANTED**.  An appropriate judgment will be entered.

**DONE** and **ORDERED** this 12th day of December, 2019.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE